**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| PETER A. PEDROLI, derivatively on Behalf of MICROTUNE, INC. | § § § | |
| Plaintiff, | § § | |
| v. | § § | |
| DOUGLAS J. BARTEK, *et al.*, | § § | Case No. 4:07-CV-43 |
| Defendants, | § § | |
| - and - | § § | |
| MICROTUNE, INC., a Delaware corporation | § § | |
| Nominal Defendant. | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

The following motions are pending before the court:

1.     Defendant Everett Roger's motion to dismiss Plaintiff's complaint and supporting brief (docket entry #40);

2.     Defendant William L. Housley's motion to dismiss shareholder derivative complaint and joinder in the motion to dismiss of certain directors and officers (docket entry #43);

3.     Defendant Rob-Roy J. Graham's motion to dismiss and brief in support thereof (docket entry #44);

4.     Motion to dismiss verified shareholder derivative complaint as against Defendant Nancy A. Richardson (docket entry #47);

5.     Microtune's motion to dismiss shareholder derivative complaint (docket entry #49);

6.     Motion to dismiss of certain directors and officers (docket entry #50);

7.     Motion to dismiss verified shareholder derivative complaint by Defendant Douglas

J. Bartek (docket entry #62); and

8.      Defendant Martin Englmeier's motion to dismiss shareholder derivative complaint and joinder in certain directors and officers' motion to dismiss and reply in support of the motion to dismiss (docket entry #96).

Peter Pedroli filed this derivative suit against twenty-seven current and former officers and directors of Microtune over the alleged former practice by corporate insiders of backdating stock options. The complaint alleges that these practices date back to 1999. Pedroli contends that certain Microtune insiders changed their respective stock option grant dates to take advantage of lower exercise prices than those that were available on the actual dates specified for the stock options. Pedroli claims that this practice violated Microtune's two stock option plans which restricted the exercise of stock options under the plans to the fair market price of the option on the date of the grant. Pedroli alleges that in 2006, Microtune disclosed that an internal investigation revealed the practices for which he now brings suit. Pedroli claims this practice has severely impacted Microtune's bottom line.

As expected, defendants have filed a number of motions to dismiss for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).  There are no challenges to this court's jurisdiction or venue. Pedroli brings a number of pendent state claims in his complaint. For federal jurisdiction, he alleges violations of Section 304 of the Sarbanes-Oxley Act of 2002 ("SOX") against Fontaine, Richardson, Graham and Kupp in Count I.   15 U.S.C. § 7243 (2006).   All director defendants are sued for violation of Section 14(a) of the Securities Exchange Act of 1934 ("Exchange Act") in Count II.  15 U.S.C. § 78n (2006).  All defendants are sued for violation of § 10(b) of the Exchange Act, 15 U.S.C. § 78j (2006), and Rule 10(b)(5), 17 C.F.R. § 240.10b-5 (2007), promulgated thereunder.

Dismissal under Rule 12(b)(6) is appropriate when the plaintiff has failed to allege "enough facts to state a claim to relief that is plausible on its face" and fails to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1965, 1974, 167 L.Ed.2d 929 (2007).

### <u>SARBANES-OXLEY ACT OF 2002</u>

Pedroli asserts that the Sarbanes-Oxley Act of 2002 creates a private cause of action and has sued Fontaine, Richardson, Graham and Kupp for disgorgement. He argues that one court has implicitly recognized a cause of action under §304, citing *In re AFC Enters. Inc. Derivative Litig.*, 224 F.R.D. 515, 521 (N.D.Ga. 2004), ignoring the predominant holdings across the country that the Act does not create a private cause of action under § 304 as well as other sections of the Act.  *See Wulliger v. Sewell*, 363 F.Supp.2d 940, 950-51 (N.D. Ohio 2005) ("This provision states that it is not meant to create any new private cause of action, but only to govern already existing private causes of action under federal securities laws.  S.Rep. No. 107-146 at *12 (2002).  Moreover, the additional views of several committee members commented on the existence of private rights of action:  We agree that Section 4 of this bill is not intended to create a new private right of action or to broaden any existing private right of action. *Id.* at *29."; *Mehlenbacher ex. rel. Asconi Corp. v. Jitaru*, 2005 WL 4585859 (M.D. Fla. 2005) (after conducting an exhaustive analysis of *Cort v. Ash*, 477 U.S. 66 (1975), the court found no "clear evidence" that Congress intended to create a private cause of action); *In re BISYS Group Inc. Derivative Action*, 396 F.Supp.2d 463 (S.D.N.Y. 2005); *Neer v. Pelino*, 389 F.Supp.2d 648 (E.D. Pa. 2005); *Kogan v. Robinson*, 432 F.Supp.2d 1075 (S.D. Cal. 2006); *In re Digimarc Corp.*, 2006 WL 2345497 (D. Or. 2006); *In re Whitehall Jewellers, Inc.*, 2006 WL 468012 (N.D. Ill. 2006) ; *In re Intelligroup Securities Litigation*, 468 F.Supp.2d 670 (D.

-3-

N.J. 2006).

As Pedroli points out, the Fifth Circuit has not decided whether the Act creates a private cause of action. However, the court notes that the Fifth Circuit applies the *Cort* factors in analyzing whether a private cause of action is provided in an Act.  The Fifth Circuit has also declined to create a private cause of action when Congress has not manifested its intent that one should exist. *See Wright v. Allstate Ins. Co.*, 500 F.3d 390 (5th Cir. 2007).  Pedroli has advanced no theory or argument as to why the Fifth Circuit would depart from its position that Congress, in drafting legislation, must clearly manifest its intent to create a private cause of action.  The court declines to address the issue in any more detail and believes that the cases cited conclusively mandate a dismissal of Count I against the four Defendants named in that count for violations of the Sarbanes-Oxley Act.

## SECTION 14(a)

Pedroli also sues the various director defendants for violations of Section 14(a) of the Exchange Act.  Pedroli alleges that Microtune's proxy statements of March 13, 2002, March 26, 2004 and April 27, 2005 contain false and misleading statements. The proxies failed to disclose that Microtune's executives were engaging in improper backdating and that the Board was approving those options as backdated.  Pedroli claims that the proxies also falsely portrayed the compensation presented and did not take into account the backdated options.

Rule 14a-9 provides that "[n]o solicitation subject to this regulation shall be made by means of any proxy statement ... which, at the time ... it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  An omitted fact is material "if there is a substantial likelihood that

a reasonable shareholder would consider it important in deciding how to vote." *General Elec. Co. v. Cathcart*, 980 F.2d 927, 932 (3d Cir.1992), quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).  SOX does not extend limitations or repose for § 14(a) claims. *In re ExxonMobil Corp. Securities Litigation*, 500 F.3d 189 (3d Cir. Nov. 20, 2007).  Therefore, any claims involving the 2002 Proxy statement are barred by the three year period of repose.

To be liable in the first place, a director would have had to have held a position as director when the proxy was issued. The following individuals were not directors at the time any proxies were issued and, therefore, could not be liable for a 14(a) violation: Bernard Marren, Douglas Bartek (although a director in 2002, any action is barred by repose), Martin Englmeier, John P. Norsworthy, Harvey B. Cash (according to Pedroli's complaint, Cash was not a director at the time of the March 2004  proxy), Jack K. Furst, Kenneth Langone, Eric Lindberg, Lawrence D. Stuart, Jr., and Philippe von Stauffenberg.  Therefore, as to the above-named directors, Pedroli's 14(a) claim is dismissed with prejudice.

As to the remaining directors, to establish a claim under section 14(a) of the Exchange Act, Pedroli need only allege that some part of a proxy statement "contain[s] any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not misleading ..." 15 U.S.C. § 78n. To state a claim under section 14(a), a plaintiff must allege that: "(1) a proxy statement contained a material misrepresentation or omission, which (2) caused plaintiffs injury, and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *Bond Opp'ty Fund v. Unilab Corp.*, 2003 WL 21058251, *3 (internal quotation marks and citation

omitted). "Omission of information from a proxy statement will violate [Section 14(a) and Rule 14a-9] if either the SEC regulations specifically require disclosure of the omitted information in a proxy statement, or the omission makes other statements in the proxy statement materially false or misleading." *Resnik v. Swartz*, 303 F.3d 147, 151 (2nd Cir. 2002).  An omitted fact is material "if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *Poughkeepsie Sav. Bank v. Morash*, 1989 WL 40008, *3 (S.D.N.Y. 1989), citing *TSC Indus., Inc. v. Northrop, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976).  Where, as here, a plaintiff's allegations "sound in fraud," Federal Rule of Civil Procedure 9(b) requires the plaintiff to state the circumstances constituting the fraud with particularity. *See* Fed.R.Civ.P. 9(b); *Rombach v. Chang*, 355 F.3d 164, 171 (2nd Cir.2004); *see also In re Exxon Mobil Corp. Sec. Litig.*, 500 F.3d 189, 197 (3rd Cir.2007), citing *Rombach*, reiterating that Rule 9(b) pleading requirements apply to section 14(a) claims that sound in fraud; *In re JP Morgan Chase Sec. Litig.*, 363 F.Supp.2d 595, 636 (S.D.N.Y.2005); *In re U.S. Office Prods. Sec. Litig.*, 326 F.Supp.2d 68, 80-81 (D.D.C.2004).  Pedroli merely states that because of their positions and access to meetings and documents and other employees, the remaining directors should be held liable. The court believes that Pedroli has not pled sufficient, specific facts to hold these remaining directors liable.  The complaint is nothing more than an example of group pleadings disfavored in this Circuit. *See Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 287 (5th Cir. 2006).

## SECTION 10(b) AND RULE 10(b)(5) CLAIMS

All defendants have been sued in Count III for 10(b)(5) claims. Defendants are alleged to have disseminated or approved financial statements that did not disclose Microtune's backdating practices. The defendants are also alleged to have recklessly disregarded the fact that Microtune's

financial statements contained misrepresentations. As such, Count III charges that the defendants employed devices, schemes and artifices to defraud, made untrue statements or omitted material facts and engaged in acts, practices and a course of business that operated as a fraud or deceit upon Microtune.  Pedroli charges that Microtune would not have repurchased shares at the price paid if it was aware its stock price was artificially and falsely inflated by the defendants' misleading statements.

All the defendants, whether characterized as director defendants, officer defendants or insider selling defendants, are accused of the same general conduct, to wit: that they "knew, consciously disregarded, [were] reckless and grossly negligent in not knowing or should have known, that Microtune insiders were improperly backdating stock option grants to maximize their personal profits, via access to internal corporate documents, conversations, and connections with other corporate officers and employees, attendance at Board meetings and via reports and other information provided to (him or her) in connection therewith."

To state a claim under § 10(b) and Rule 10b-5, "a plaintiff must allege, in connection with the purchase or sale of securities: '(1) a misstatement or an omission (2) of material fact (3) made with scienter (4) on which plaintiff relied (5) that proximately caused [the plaintiffs'] injury.'" *ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 348 (5th Cir.2002). Under the heightened pleading standards of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), if a plaintiff alleges that a defendant "made an untrue statement of a material fact" or "omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading," then "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding

the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." Pub. L. No. 104-67, § 101(b), 109 Stat. 737, 747 (codified at 15 U.S.C. § 78u-4(b)(1) (2006)). Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The Fifth Circuit has provided this summary test:

> [A] plaintiff pleading a false or misleading statement or omission as the basis for a section 10(b) and Rule 10b-5 securities fraud claim must, to avoid dismissal pursuant to Rule 9(b) and 15 U.S.C. §§ 78u-4(b)(1) & 78u-4(b)(3)(A):
>
> (1) specify ... each statement alleged to have been misleading, i.e., contended to be fraudulent;
>
> (2) identify the speaker;
>
> (3) state when and where the statement was made;
>
> (4) plead with particularity the contents of the false representations;
>
> (5) plead with particularity what the person making the misrepresentation obtained thereby; and
>
> (6) explain the reason or reasons why the statement is misleading, i.e., why the statement is fraudulent. *ABC Arbitrage*, 291 F.3d at 350.

Under the PSLRA, a complaint must state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind. *Cent. Laborers' Pension Fund v. Integrated Elec. Servs.*, 497 F.3d 546, 551 (5th Cir.2007). "Importantly, the Supreme Court recently stated that '[t]o determine whether the plaintiff has alleged facts that give rise to the requisite 'strong inference' of scienter, a court must consider plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff.'" *Id.*, citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2510 (2007). A complaint will survive a motion to dismiss "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 127 S.Ct. at 2510; *In re*

*Affiliated Computer Services Derivative Litigation*, 2007 WL 4440920 (N.D. Tex. 2007).

However, scienter must rest on something more than the defendants' positions with the company. *Abrams v. Baker Hughes, Inc.*, 292 F.3d 424, 432 (5th Cir. 2002). Pedroli also attempts to connect some of the defendants' insider trading with a showing of scienter. Again, this alone is not enough to infer scienter. *Cent. Laborers' Pension Fund v. Integrated Elec. Servs.*, 497 F.3d 546, 552-53 (5th Cir. 2007) (to establish scienter, insider trading must be in suspicious amounts, at suspicious times, and out of line with prior trading practices). As to the defendants' culpability in signing forms 10Q and 10K, Pedroli must show something more than a mere signing to establish liability. *Mortensen v. AmeriCredit Corp.*, 123 F.Supp.2d 1018, 1027 (N.D. Tex. 2007). Corporate officers are not liable for acts solely because they are officers, even where their day-to-day involvement in the corporation is pleaded. *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 363-64 (5th Cir. 2004).

A claim under § 10(b) that is based upon backdating accrues on the date the option grant was made. *In re Ditech Networks, Inc. Derivative Litig.*, 2007 WL 2070300, *7 (N.D. Cal. July 16, 2007). Congress extended the statutes of limitation and repose to two and five years, respectively, in SOX. 28 U.S.C. § 1658(b). The statutes of limitation and repose in SOX apply to cases filed after SOX's enactment date – July 30, 2002 – if the claims were not time-barred as of that date under the prior law. *Margolies v. Deason*, 464 F.3d 547 (5th Cir. 2006).

To state a claim under § 10(b) and Rule 10(b)(5) for insider trading, Pedroli must plead that a defendant (1) used material, nonpublic information, (2) knew or recklessly disregarded that the information was material and nonpublic, and (3) traded contemporaneously with the plaintiff. *In re*

*Sec. Litig. BMC Software, Inc.*, 183 F. Supp. 2d 860, 916 (S.D. Tex. 2001).  In addition, scienter is an independent element of a Rule 10(b)(5) violation for insider trading.  *Dirks v. SEC*, 463 U.S. 646, 664 n.23 (1983).  As to allegations that some of the officers and directors engaged in insider trading, there can be no basis for liability if such sales were properly disclosed. *See Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 367-69 (5th Cir.2004).  Pedroli's complaint is, in essence, a scatter-gun approach to pleading liability.  The court finds that the only way to deal with this approach is to discuss each defendant's liability separately.

**BARTEK** – Bartek was Microtune's CEO, chairman of the board and a director from May 1996 to June 2003, and president briefly before his departure. The complaint alleges that he received at least 75,000 options that were dated at or very close to the lowest stock price for the month in which they were granted.  Plaintiff alleges on information and belief that Bartek backdated these options.  The complaint also alleges that he sold 778,726 of his personally held shares while in possession of material, non-public information concerning the undisclosed practice of backdating stock option grants. The complaint makes the same general allegations as to Bartek as it does to all other officers and directors. The court agrees with Bartek that the allegations do not satisfy the heightened pleading requirements of the PSLRA. The complaint fails to plead with particularity any false statements attributed to Bartek. Further, the complaint inappropriately relies on group pleading. The complaint fails to demonstrate with particularity the requisite scienter as to Bartek. An incorrect Sarbanes-Oxley certification, without more, does not by itself create a strong presumption of scienter. *In re Intelligroup Sec. Litig.*, 468 F.Supp.2d 670, 707 (D. N.J. 2006).  As to the stock sales, only insider trading in suspicious amounts or at suspicious times is probative of scienter.  Plaintiff makes no allegations that these sales are out of line with prior trading practices.  Further, even

unusual sales by one insider do not give rise to a strong inference of scienter when other defendants do not sell some or all of their shares during the  relevant period.  *Abrams v. Baker Hughes, Inc.*, 292 F.3d 424 (5th Cir. 2002).  As Bartek points out, the shares were sold over an 18 month period.  The court also finds that the complaint fails to properly plead loss causation.  In fact, there is no pleading that the stock price declined after the revelations of the stock option backdating.  *See Dura Pharmaceuticals. Inc. v. Broudo*, 544 U.S. 336 (2005).  Something beyond the mere possibility of loss causation must be alleged, lest Pedroli with a "largely groundless claim" be allowed to "take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Id*. at 347 (citations omitted).  As to Counts I-III, Plaintiff's complaint against Bartek fails to state a claim upon which relief may be granted.  The claims against Bartek under SOX and Section 14(a) are dismissed with prejudice.  The claim against Bartek under Rule 10b-5 is dismissed without prejudice.

**ENGLMEIER** – Pedroli alleges that Englmeier was a director of Microtune and vice-chairman of the Board until August 2001. The complaint also alleges that he sold 640,126 shares of stock while in possession of material, non-public information concerning the practice of backdating stock options. There are the usual allegations that because of his position on the Board, he knew or should have known of the backdating scheme. Englmeier also asserts that the 10(b) claim is time-barred because the facts complained about occurred more than five years before suit was filed. Pedroli does not dispute this. All claims as to  Englmeier are dismissed with prejudice.

**NORSWORTHY** – Norsworthy was a director from May 1996 to September 2001. For the reasons noted as to Englmeier, all counts as to Norsworthy are dismissed with prejudice.

-11-

**FURST** – Furst was a director from 2001 to 2002. For the reasons noted as to Englmeier, all counts as to Furst  are dismissed with prejudice.

**LANGONE** – Langone was a director from November 1996 to at least October 2000. For the reasons noted as to Englmeier, all counts as to Langone  are dismissed with prejudice.

**LINDBERG** – Lindberg was a director from August 2001 to April 2002. For the reasons noted as to Englmeier, all counts as to Lindberg are dismissed with prejudice.

**STUART** – Stuart was a director from January 2000 to August 2001. For the reasons noted as to Englmeier, all counts as to Stuart are dismissed with prejudice.

**VON STAUFFENBERG** – Von Stauffenberg was a director from January 2000 to August 2001. For the reasons noted as to Englmeier, all counts as to von Stauffenberg are dismissed with prejudice.

**PETERSON** – Peterson has been Microtune's general counsel since April 2004. Any claims as to Peterson before April 2004 are dismissed with prejudice. Since April 2004, Pedroli alleges that by virtue of his position, Peterson  knew or should have known of the practice. Pedroli's generalized allegations are not sufficient. All claims as to Peterson, not otherwise barred, are dismissed without prejudice.

**CICIORA** – Ciciora has been a director since 1996. Pedroli alleges that as a result of his position, he knew or should have known of the backdating practices. Since 2002, he has signed various 10K and 10Q forms. However , there is nothing to demonstrate when and to what extent he had knowledge of the backdating practices. The court finds that the pleadings as to Ciciora do not meet the heightened pleading standards and should be dismissed without prejudice.

**MARREN** – Marren has been a director since August 2005. The only allegations as to him are those cast in the boilerplate allegations as to all directors. The complaint notes that he signed one Form 10K in March 2006. The complaint is silent as to any other participation or omission by Marren. Marren is thrown into the mix of allegations that state from 1999 to the filing of the complaint, he and others caused or allowed Microtune to file 10Q's and Form 10K's that misrepresented the company's finances in violation of GAAP, and caused compensation expenses to be understated and net earnings overstated. The court finds that the 10b-5 claim against Marren does not meet the heightened pleading standards and should be dismissed without prejudice.

**CLARDY** – Clardy has been a director since 1996 and a member of the compensation committee since 2004. He was also a member of the audit committee. He is alleged to have known about the practice of backdating stock options by virtue of his positions within the company. He has also signed various 10K and 10Q forms over the years. No particular motive is attributed to Clardy. Furthermore, as to Clardy, and for that matter all defendants, the Fifth Circuit requires a plaintiff to establish loss causation in order to trigger the fraud-on-the- market presumption. *See Greenberg v. Crossroads Systems, Inc.*, 364 F.3d 657 (5th Cir. 2004). Without a pleading alleging a decline in price, the court finds that there is no loss causation. Since Plaintiff has not pled loss causation, there can be no 10(b) claim.  Pedroli's damages are stated in  paragraph 94 of the complaint. Nowhere does he affirmatively state that the omission and subsequent revelation of the backdating practice caused a decline in Microtune's stock. Pedroli must plead that the decline in price is due to the revelation of stock option backdating. *See Greenberg*, 364 F.3d at 665. Pedroli merely alleges that because of these practices, the company's stock price was artificially inflated and Microtune would have to pay more money to buy the stock back. The Supreme Court has ruled that this is insufficient

to meet the loss causation test. *See Dura Pharmaceuticals, Inc., supra*.  Pedroli submits that he has

met the *Dura* test, noting two drops in stock price, one occurring over a week period. Pedroli invites

the court to take judicial notice of matters of public record. Pedroli notes that Microtune's stock

closed at $4.93 on November 1, 2006 and fell to $4.60 on November 9, 2006. Yet, Pedroli fails to

mention that the day after the announcement, the stock actually rose to $5.02. On November 10,

2006, the stock had gone up to $4.81 from the low noted above. In the other example Pedroli gives,

he notes that Microtune's stock price fell from a close of $5.82 on September 19, 2006 to $5.70 on

September 20, 2006. However, on the 19th, the stock opened at $5.97 and fell 15 cents to close at

$5.82. The day the audit committee released its findings, the stock opened at $5.75 but fell only 5

cents to $5.70. Since Pedroli has not properly pled loss causation as required, the court need not

address the arguments advanced by defendants that the one day drop in price was de minimis. As

Pedroli states, this is all a matter of public record and such being the case, his failure to plead loss

causation indicates to the court that any drop must have been insignificant to the Plaintiff or he

would have surely pled it knowing full well the standard required in this Circuit. All counts as to

Clardy should be dismissed without prejudice.

 **CRADDOCK** – Craddock is alleged to have been a Microtune director since April 2002 and

to have signed 10K's. Again, by virtue of his position and access to corporate records, Pedroli alleges

that he should have known of the backdating practices. For the multiple reasons stated above, all

counts against Craddock should be dismissed without prejudice.

 **WHITE** – White has been a director since 2004 and also signed 10K's . For the reasons

stated above,  all counts as to White should be dismissed without prejudice. The court also notes that

many of the complained of backdated options occurred well before many of the directors, such as

White, assumed their positions.

**CASH** – Cash was a director from 1996 until 2004. He also signed 10K's. For the reasons stated above, any claims occurring more than five years before the filing of the complaint are barred by repose and should be dismissed with prejudice. As to the claims occurring within the five year period, Pedroli fails to plead with specificity and also fails to sufficiently plead loss causation. Those claims should be dismissed without prejudice.

**LE VECCHIO** – LeVecchio has been a director since 2003 and a member of the audit committee since August 2003. All of the challenged options, except for Koch, occurred before he was a director. The mere fact that LeVecchio was on the audit committee is not enough to find scienter as to Koch's alleged backdated options. There is no allegation concerning what duties the audit committee was charged with, whether it coordinated outside audits, whether it oversaw various aspects of Microtune's financial accounting or what internal controls it enforced. Allegations of membership on an audit committee may, in certain circumstances, provide a basis for liability under the group pleading doctrine. *In re Alstom SA*, 406 F.Supp.2d 433, 449 (S.D.N.Y. 2005); *but see Wojtunik v. Kealy*, 394 F.Supp.2d 1149 (D.Ariz. 2005) (audit committee membership is insufficient to make an outside director liable under the group pleading doctrine); *In re Sunbeam Sec. Litig.*, 89 F.Supp.2d 1326,1341 (S.D. Fla. 1999).

Here, there is no mention of how the audit committee learned of Microtune's alleged improper accounting, who presented it with the information, when or how the committee members' response, or lack thereof, rendered them active participants in Microtune's wrongdoing. *See generally Jones ex. Rel. CSX Auto Corp. v. Jenkins*, 503 F.Supp.2d 1325 (D.Ariz. 2007). Mere

membership on a committee, without more, will not suffice to withstand a 12(b)(6) challenge.

**GRAHAM** – Graham was Microtune's Secretary from March 2004 to May 2005. He was also chief development officer and vice-president from November 2004 to May 2005 and CFO from August 2003 to November 2004.  He also certified certain filings. Graham's position alone does not render him liable. *See Abrams, supra*.  His position does not excuse Pedroli's obligation to plead scienter with particularity. *In re Sec. Liti. BMC Software*, 183 F.Supp.2d 860, 887 (S.D. Tex. 2001). The mere publication of inaccurate accounting figures or failure to follow GAAP, without more, does not establish scienter. *Goldstein v. MCI WorldCom*, 340 F.3d 238, 253 (5th Cir. 2003).  Here, the allegations against Graham center on his position and what he must have known. There is no specific pleading as to what he actually knew or withheld.  Having considered all the facts and circumstances, the complaint fails to raise a strong inference of scienter. Simple negligence, without more, does not rise to a 10(b)(5) violation. Except for the SOX claim, which is dismissed with prejudice, the remaining counts as to Graham are dismissed without prejudice.

**KIRK** – Kirk has been a vice-president since March 2003. There are no allegations he received backdated options. He never signed a financial certification. In fact, his position is one of sales. There is nothing that Pedroli has said or could say to hold this individual liable under any theory. All claims are dismissed with prejudice.

**KUPP** – Kupp has been a vice-president, CFO and secretary since May 2005. He has also signed SOX certifications and filings. As discussed above, a mere certification as to SOX or signing a 10K, without more, does not equate to a finding of scienter. Except for the SOX claim, which was dismissed with prejudice, the remaining counts as to Kupp are dismissed without prejudice.

**TADDIKEN** – Taddiken has been Microtune's chief operating officer since 2003 and held other positions before that date. Of the approximately 700,000 options he received, Pedroli alleges that 24,000 are believed to have been backdated. This occurred in 2001 and any clam as to this transaction is barred. He alleges a significant number of shares sold as an insider but there is no allegation as to when the shares were sold, that they were contemporaneous to that of the Plaintiff or that they were not properly disclosed. Again, there is nothing but boilerplate pleadings to support Pedroli's claim. Taddiken signed and certified a 10Q in 2003, but there are no allegations that support a finding of scienter. All claims as to Taddiken are dismissed without prejudice.

The remaining defendants are primarily sued as officers. Fontaine has been president and CEO since August 2003 and served as president before that.  From November 2000 to February 2002, he is alleged to have sold 390,600 of his personally held shares. There is no allegation that he received backdated stock options. He has also signed SOX certifications and signed filings.

Chapman has been vice-president of accounting since 2004 and held other positions prior to that time. He is alleged to have received 14,600 backdated options in 2003 and sold  4,266 of his shares on November 22, 2004.  The nearest other sale by an "insider" is alleged to have occurred more than three years before. Chapman signed two SOX certifications.

Housley was president from December 2001 to April 2003. The complaint alleges that he resigned over previous accounting irregularities.  The complaint alleges that Housley received 36,000 options that are alleged to have been backdated in 2001. He also sold 32,000 shares of his stock over a 16 month period ending in 2002. Pedroli identifies no filings or certifications made by Housley. Because Pedroli has pled no specific facts as to Housley nor indicated how his sales of stock were

irregular or suspicious, all claims as to Housley should be dismissed with prejudice. The last "egregious" backdating practice noted in the complaint which came during Housley's watch was 2001. Therefore, Pedroli has failed to state a claim against Housley.

Richardson served as general counsel from April 2001 to August 2003 and took on the responsibility of CFO in July 2002.  She signed four Forms 10Q and one Form 10K.  Pedroli claims Richardson received 36,000 improperly backdated stock options in 2001, but never states when they were actually made or who allegedly approved them. The complaint alleges that she sold shares over a three year period, even after she left the company.  The best that can be said about the allegations against Richardson, and for that matter the other defendants, is that the allegations are wholly conclusory and non-specific.  Even an incorrect SOX certification does not, by itself, create a strong inference of scienter. *See, e.g., In re Hypercom Corp. Sec. Litig.*, 2006 WL 1836181, * 11 (D. Ariz. 2006).   As to insider trading, there has been no demonstration that Richardson's trading was in suspicious amounts or at suspicious times. *See Abrams*, 292 F.3d at 435. Except for the SOX claim, which is dismissed with prejudice, the remaining claims as to Richardson are dismissed without prejudice.

Rogers was a vice-president and CFO until 2002. He is alleged to have taken 12,000 backdated options in 2001 and sold approximately 135,000 shares over an 18 month period. He also signed a Form 10K and 10Q within the repose period. For the multiple reasons already stated, the court finds that the complaint as to Rogers should be dismissed without prejudice.

In the end analysis, all directors and officers are alleged to have either engaged in the same conduct, signed false certifications, or sold stock.  Such generalized pleadings only leaves the court

with the impression that Pedroli failed to adhere to his burden to plead facts with particularity.

## IS DEMAND FUTILE?

Fed.R.Civ.P. 23.1 requires Pedroli to allege, with particularity, the efforts, if any, made to obtain the desired action from the directors and the reasons for his failure to obtain such action or for not making the demand. The obligation to make a demand is governed by Delaware law. *See generally Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90 (1991).   Pedroli claims that demand is futile. The reason for this is that Pedroli claims the demand would be a futile, wasteful and useless act. First, he says that the entire Board is liable for backdating by insiders.  He claims that the Board should have properly informed itself of the circumstances surrounding the options. This statement only reinforces the directors' claims that Pedroli has failed to plead scienter. He says that many of the directors could be liable for breach of fiduciary duty because they either served on the board, compensation committee or audit committee. Moreover, he claims that some of the directors sold stock as insiders during their tenures on the board. He also notes the Board has a history of stonewalling derivative suits. He cites one example.

The various director defendants point out that an independent investigation revealed that no member of the current Board engaged in any wrongful conduct. The director defendants allege that approval of options was delegated to the compensation committee. Two of those members did not join the committee until after the practice had stopped (Marren and Clardy). There are also no allegations that any current director (Ciciora, Clardy, Craddock, Fontaine, LeVecchio, Marren, Tai, White or Schueppert) received backdated options. Under Delaware law, membership on an audit committee does not alone render directors personally liable and, therefore, too interested to consider

a shareholder's demand. *Guttman v. Huang*, 823 A.2d 492 (Del. Ch. 2003).  Likewise, conclusory allegations regarding the directors as a group are insufficient to demonstrate demand futility. Courts applying Delaware law have held that allegations that directors merely participated in wrongful conduct are insufficient.  *See, e.g., In re Silicon Graphics Inc. Securities Litigation*, 183 F.3d 970, 990 (9th Cir. 1999).  Similarly, allegations that directors "must have known" about and "failed to prevent and correct the improper financials" are insufficient.  *See Rattner v. Bidzos*, 2003 WL 22284323, *10 n. 53 (Del.Ch. Sept. 30, 2003); *see also Ferre v. McGrath*, 2007 WL 1180650, *6 (S.D.N.Y. 2007) (holding that "[a]llegations of knowledge explained solely by the directors' service as directors, without more, are insufficient as a matter of law – even where, as here, the plaintiff alleges that the matters in suit relate to the corporation's 'core' business.") (citing *Rattner*, 2003 WL 22284323 at *13).  Similarly, "[a] plaintiff may not 'bootstrap allegations of futility' by pleading merely that 'the directors participated in the challenged transaction or that they would be reluctant to sue themselves.'" *In re Sagent Tech.*, 278 F.Supp.2d 1079, 1089 (N.D. Cal.2003), citing *Blasband v. Rales*, 971 F.2d 1034, 1049 (3d Cir.1992) (citing Delaware law); *Jones ex. rel. CSX Auto Corp.*, 503 F.Supp.2d at 1333.

The only allegation as to Craddock, LeVecchio, White and Tai in regard to the audit committee is that they face substantial liability. LeVecchio became a member of the audit committee in August  2003 and Craddock in January 2004. Except for Koch, all the complained of insider option practices predated their committee membership. The same holds true for White. The court does not believe that Pedroli has shown futility as to the members of the audit committee.

Ciciora and Clardy are members of the compensation committee. It was their responsibility to review and approve grants of stock options. Pedroli claims that they cannot be disinterested. He

also says they face substantial liability. Clardy did not become a member of the committee until 2004.   There is no particularized allegation that either the audit committee or compensation committee knew that options were backdated.

As to the alleged insider trading by Fontaine and Tai, Pedroli must plead and explain what inside knowledge the defendants traded upon or how he or she gleaned such information. Pedroli must allege with detail that each sale by each individual defendant was entered into and completed on the basis of, and because of, adverse material, non-public information. *In re Coca-Cola Enterprises, Inc. Derivative Litigation*, 478 F.Supp.2d 1369, 1379-1380 (N.D. Ga. 2007). Here, Pedroli merely lumps all sales together. The same could be said as to Pedroli's allegations as to the remaining directors. Those allegations are boilerplate and do not sufficiently satisfy the court that Pedroli should be excused from his obligation in a derivative suit against a Delaware corporation to make demand prior to filing suit. For this reason alone, the complaint should be dismissed.

## STATE LAW  CLAIMS

Section 1367 of Title 28 of the United States Code permits federal courts to exercise supplemental jurisdiction over pendent state claims. Whether to exercise such jurisdiction after dismissing the underlying federal claims is a matter left to the sound discretion of the court. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Heaton v. Monogram Credit Card Bank*, 231 F.3d 994, 997 (5th Cir. 2000). When the court dismisses the federal claims at a preliminary stage of litigation, judicial economy argues against the exercise of pendent or supplemental jurisdiction over state claims. *See LaPorte Constr. Co. v. Bayshore Nat'l Bank*, 805 F.2d 1254, 1257 (5th Cir.1986). The court declines to exercise supplemental jurisdiction

and the remaining state law claims are also dismissed without prejudice.

The court finds that all claims against the defendants for violating SOX are dismissed with prejudice to the refiling of the same. Section 14(a) claims against the following directors are dismissed with prejudice: Marren, Bartek, Englmeier, Norsworthy, Cash, Furst, Langone, Lindberg, Stuart, and Von Stauffenberg.  All other section 14(a) claims are dismissed without prejudice. As to the 10(b)(5) claims, the Plaintiff's claims against the following defendants are dismissed with prejudice to the refiling of the same: Englmeier, Norsworthy, Furst, Langone, Lindberg, Stuart, Von Stauffenberg, and Housley. The claims against all other defendants are dismissed without prejudice.

As to those defendants dismissed without prejudice, the Plaintiff is granted leave to file an amended complaint in line with the reasoning noted herein, if the Plaintiff can do so in good faith and in compliance with Rule 11.  Any amended complaint must be filed within 60 days of this order.

IT IS SO ORDERED.

**SIGNED this the 31st day of March, 2008.**

_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE

-22-